| KAPLAN FOX & | BERNSTEIN LITOWITZ | BARROWAY TOPAZ KESSLER |
| KILSHEIMER LLP | BERGER & GROSSMANN LLP | MELTZER & CHECK LLP |

October 6, 2009

**BY HAND**

Honorable Denny Chin
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: *In re Bank of America Corp. Sec., Derivative and ERISA Litig.*, No. 09-MDL-2058 (DC); this document relates to all Securities Actions.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/30/09

Dear Judge Chin:

On behalf of Lead Plaintiffs in the Securities Actions and pursuant to Rule 2(A) of Your Honor's Individual Practices, we write to respectfully request a pre-motion conference to seek leave to move for an order modifying the stay of discovery under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(b)(3)(B). Lead Plaintiffs seek partial relief from the discovery stay in order to obtain (1) those documents which Defendants have produced, or will produce, to various government agencies (including the SEC, Congress, the New York Attorney General ("NYAG"), and the North Carolina Attorney General ("NCAG")) conducting investigations of the merger (the "Merger") between Bank of America Corporation ("BoA") and Merrill Lynch & Co., Inc. ("Merrill Lynch") (including the payment of bonuses by Merrill Lynch for 2008); and (2) copies of any transcripts of testimony given in connection with these investigations.

The PSLRA provides that, in a private securities action, discovery "shall be stayed during the pendency of any motion to dismiss, ***unless the court finds*** upon the motion of any party that ***particularized discovery is necessary*** to preserve evidence or ***to prevent undue prejudice*** to that party." 15 U.S.C. § 78u-4(b)(3)(B) (emphasis added). As set forth herein, Lead Plaintiffs seek limited discovery to avoid the undue prejudice that will result if Lead Plaintiffs are not allowed to obtain the documents that Defendants have produced to these government entities, which are pursuing similar claims and developing facts and evidence that are indisputably directly relevant to this action.

The Merger was announced on September 15, 2008, approved by BoA's and Merrill Lynch's shareholders on December 5, 2008, and consummated on January 1, 2009. In January 2009. it was revealed that Merrill had suffered massive undisclosed losses of more than $21 billion during the fourth quarter of 2008, paid out billions of dollars in bonuses to its executives and employees prior to the close of the transaction notwithstanding those losses, and that BoA had received a $138 billion taxpayer bailout from the Federal Government in order to absorb Merrill's losses and complete the Merger. In response to these disclosures, the price of BoA common stock lost more than 50% of its value (losses which *The New York Times* called "one of the greatest destructions of shareholder value in financial history"), and a raft of government investigations were commenced.

On September 25, 2009, Lead Plaintiffs filed their Consolidated Amended Class Action Complaint (the "Complaint") (Docket No. 29), which asserts claims under Sections 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Sections 11, 12(a)(2) and 15

The Honorable Denny Chin
October 6, 2009
Page 2

of the Securities Act of 1933 (the "Securities Act"). The gravamen of the Complaint is that Defendants violated the federal securities laws by failing to disclose, at any time prior to the close of the Merger, the following highly material facts: (1) during the Merger negotiations, BoA and Merrill had secretly agreed to allow Merrill to pay, on an accelerated basis and prior to the close of the merger, up to $5.8 billion in bonuses to its executives and employees -- an amount which equaled 12% of the value of the Merger and 30% of Merrill's shareholder equity; (2) Merrill had suffered losses in excess of $15 billion during October and November 2008 alone -- losses which were so severe that they caused senior BoA officers to internally debate invoking the material adverse change clause ("MAC") in the Merger agreement prior to the shareholder vote on the Merger; (3) within days of the shareholder vote, BoA's senior management, including Defendant Ken Lewis, BoA's CEO and Chairman, determined to invoke the MAC because BoA could not absorb Merrill's staggering losses; (4) BoA agreed to proceed with the Merger after the Secretary of the Treasury, Henry Paulson, threatened to fire BoA's senior management and the Board if they invoked the MAC; and (5) BoA was only able to consummate the Merger because it received a $138 billion taxpayer bailout prior to the close of the Merger.

The adequacy of BoA's disclosures to its shareholders in connection with the Merger are also at issue in proceedings and investigations commenced by the NYAG, the NCAG, the SEC and Congress, all of which have sought and obtained extensive discovery, including documents and sworn testimony, from BoA and other Defendants named in this action. Recent press reports have stated that the NYAG is likely to bring fraud claims against BoA and certain of its executives, including Mr. Lewis, in the near future. On August 3, 2009, the SEC commenced an action against BoA under Section 14(a) of the Exchange Act for issuing materially false and misleading statements in the proxy statement prior to the Merger vote, and for failing to disclose BoA's secret agreement to allow Merrill to pay its executives and employees billions of dollars in bonuses prior to the close of the Merger and regardless of Merrill's massive losses. BoA did not move to dismiss the SEC's complaint, and instead answered on September 25, 2009.

This case is precisely the type of case in which the PSLRA discovery stay serves no rational purpose, but rather serves to prejudice plaintiffs with meritorious claims. Courts recognize that the PSLRA stay of discovery was not intended to apply to cases where, as here, the claims are adequately alleged, particularly when the requested discovery already has been collected and produced in response to governmental investigations. *See, e.g., In re: FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004) (lifting stay and holding that "maintaining the discovery stay as to materials already produced to government entities does not further the policies behind the PSLRA"). Here, Lead Plaintiffs are seeking discovery neither to bolster an otherwise frivolous complaint, nor to coerce defendants to settle this matter. *In re Royal Ahold, N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 252 (D. Md. 2004) (lifting stay and holding that "the apparent strength of the plaintiffs' case may be a factor in the court's determination of the necessity of discovery under the PSLRA"). Indeed, BoA did not move to dismiss the claims asserted in the SEC action, and discovery in that action is proceeding. Accordingly, while there is a very strong likelihood that discovery in this action will go forward, if the discovery stay is not partially lifted, discovery will lag substantially behind the SEC and other government actions.

Courts have readily acknowledged that in a "rapidly shifting" litigation landscape such as this one, lack of access to discovery that is in the possession of other parties is highly prejudicial. *See, e.g., In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 183 (S.D.N.Y. 2004) (lifting stay where

The Honorable Denny Chin
October 6, 2009
Page 3

"the SEC and NYSE investigated and are continuing to investigate the precise schemes alleged by Lead Plaintiffs in the Complaint" and Lead Plaintiffs will "be prejudiced by their inability to make informed decisions about their litigation strategy in this rapidly shifting landscape"); *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) (lifting stay and holding that "[w]ithout access to documents already made available to the [government agencies], [Lead Plaintiff] would be prejudiced by its inability to make informed decisions about its litigation strategy in a rapidly shifting landscape"); *see also Westchester Putnam Heavy & Highway Laborers Local 60 Benefit Funds v. Sadia S.A.*, No. 08-cv-9528, 2009 WL 1285845, at *1 (S.D.N.Y. May 8, 2009) (lifting stay and holding that "[g]iven the existence of parallel litigation, without access to the report [made available in the parallel litigation], plaintiffs are disadvantaged vis-à-vis [the other] litigants"); *Singer v. Nicor, Inc.*, No. 02-cv-5168, 2003 WL 22013905, at *2 (N.D. Ill. Apr. 23, 2003) (lifting stay because "[p]laintiffs here may well be unfairly disadvantaged if they do not have access to the documents that the governmental and other agencies already have, during the pendency of the motion to dismiss").

As in these cases, without access to the documents that have been made available to the government entities investigating the Merger, Lead Plaintiffs will be unduly prejudiced by their inability to make informed decisions about their litigation strategy in a rapidly shifting landscape. Indeed, the Merger has received an extraordinary amount of media attention in recent months, and as these government investigations proceed, new facts about the Merger will undoubtedly continue to be revealed (and new claims may well be brought). Accordingly, if Lead Plaintiffs do not have access to the documents provided to the government entities, Lead Plaintiffs will be in the untenable position of continuously having to assess their claims without the benefit of discovery. Lead Plaintiffs will also fall significantly behind these other litigants, who will be placed in a far more favorable position than the class precisely because they are not subject to the discovery stay. Lead Plaintiffs' ability to recover from certain Defendants could also be adversely affected by a judgment or settlement in any proceedings that have been or may be brought by any government entities.

Finally, given that Lead Plaintiffs are only seeking the same documents and testimony that have been or will be collected and produced to the government entities, there is virtually no burden to Defendants in producing this material to Lead Plaintiffs.

Respectfully Submitted,

| | | |
|---|---|---|
| Robert N. Kaplan | Max W. Berger | Gregory M. Castaldo |
| Frederic S. Fox | Steven B. Singer | David Kessler |
| **KAPLAN FOX** | **BERNSTEIN LITOWITZ** | **BARROWAY TOPAZ KESSLER** |
| **& KILSHEIMER LLP** | **BERGER & GROSSMANN LLP** | **MELTZER & CHECK LLP** |
| 850 Third Avenue, 14th Fl. | 1285 Avenue of the Americas | 280 King of Prussia Road |
| New York, NY 10022 | New York, New York 10019 | Radnor, PA 19087 |
| Telephone: (212) 687-1980 | Telephone: (212) 554-1400 | Telephone: (610) 667-7706 |
| Facsimile: (212) 687-7714 | Facsimile: (212) 554-1444 | Facsimile: (610) 667-7056 |

*Co–Lead Counsel for Lead Plaintiffs in the Securities Actions*
cc:     All Counsel (via email)