| KAPLAN FOX & | BERNSTEIN LITOWITZ | BARROWAY TOPAZ KESSLER |
|---|---|---|
| KILSHEIMER LLP | BERGER & GROSSMANN LLP | MELTZER & CHECK LLP |

October 14, 2009

**BY HAND**
Honorable Denny Chin
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/30/09

Re:   *In re Bank of America Corp. Sec., Derivative and ERISA Litig.*, No. 09-MDL-2058 (DC); this document relates to all Securities Actions.

Dear Judge Chin:

We represent Lead Plaintiffs in the Securities Actions. We write to inform the Court of two significant developments that further support Lead Plaintiffs' October 6, 2009 letter requesting leave to move for an order modifying the PSLRA's discovery stay, and contradict the arguments set forth in Defendants' letter of October 8, 2009.[1]

First, on October 12, 2009, Vice Chancellor Leo Strine of the Delaware Court of Chancery denied in their entirety the defendants' motions to dismiss the complaint in *In re Bank of America Corp. Stockholder Derivative Litigation*, CA4307-VCS (the "Delaware Derivative Action") – a parallel derivative action asserting claims similar to those in this case. Specifically, the complaint in the Delaware Derivative Action asserts that BoA's CEO, Kenneth D. Lewis, and BoA's Directors – each of whom is a Defendant in this Action – breached their fiduciary duties by making materially misleading statements and omissions about numerous facts at issue in this Action.[2]

In their motions to dismiss the complaint in the Delaware Derivative Action, Defendants principally argued – as we expect they will argue here – that the complaint failed to adequately allege, with particularity, that Defendants deliberately withheld from shareholders information that was material and which Defendants had a duty to disclose. Based on the facts central to that case – which are also at the core of this Action – Vice Chancellor Strine flatly rejected these arguments and denied Defendants' motions to dismiss from the bench.[3] Discovery in the Delaware Derivative Action is now set to proceed.

The swift and total denial of Defendants' motions to dismiss in the Delaware Derivative Action, as well as the onset of discovery in that action, directly undermine several of the arguments

---

[1] All capitalized terms have the same meaning as in Lead Plaintiffs' initial letter to the Court dated October 6, 2009.

[2] The similar factual issues include that: (i) BoA failed to conduct adequate due diligence in advance of the Merger; (ii) before the shareholder vote on the Merger, Merrill Lynch had suffered approximately $14 billion in losses, leading BoA executives to internally debate invoking the MAC to terminate the Merger; (iii) immediately after the shareholder vote, BoA executives decided to invoke the MAC; (iv) operating under an irreconcilable conflict of interest, Lewis and BoA's Directors decided to close the Merger only after Federal regulators threatened to remove them if they did not consummate the Merger; (v) in order to close the Merger, BoA sought and received a $138 billion taxpayer bailout; and (vi) BoA had secretly agreed at the time of the Merger announcement to allow Merrill to pay up to $5.8 billion in discretionary bonuses on an accelerated schedule, before the Merger closed, despite Merrill's performance.

[3] Since the transcript is not yet available, Lead Plaintiffs have attached as Exhibit 1 a *Bloomberg* article titled "Bank of America Loses Bid to Dismiss Shareholder Merrill Suit," which describes Vice Chancellor Strine's decision.

The Honorable Denny Chin
October 14, 2009
Page 2

that Defendants set forth in their October 8, 2009 letter. For example, while Defendants argued that the discovery stay should remain in place because "[t]he legal adequacy of Plaintiffs' allegations has yet to be decided," Vice Chancellor Strine's decision is powerful confirmation of the adequacy of Lead Plaintiffs' factual allegations – a factor which strongly supports modifying the discovery stay. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) (modifying discovery stay where lead plaintiff had "not filed the complaint to initiate a 'fishing expedition' in search of sustainable claims or to force defendants to settle an otherwise frivolous class action").

Further, the undue prejudice that Lead Plaintiffs will suffer if they are denied access to discovery, as described in our October 6, 2008 letter, is now even more pronounced. Directly contrary to Defendants' argument that Lead Plaintiffs will not suffer undue prejudice because no other civil litigant has received substantial discovery, the plaintiffs in the Delaware Derivative Action are now slated to receive the very discovery that Lead Plaintiffs seek – thus advancing that litigation significantly while Lead Plaintiffs and the Class are forced to sit idly by. In addition, there is nothing to prevent the federal derivative plaintiffs from acquiring the same discovery now available to the Delaware derivative plaintiffs. Courts throughout the country have held that undue prejudice exists where, as here, a securities plaintiff is denied access to the same documents provided to other plaintiffs who are pursuing related litigation against the same defendants and seeking to recover from the same pool of assets. *See, e.g., Westchester Putnam Heavy & Highway Laborers Local 60 Benefit Funds v. Sadia, S.A.*, No. 08-cv-9528, 2009 WL 1285845, at *1 (S.D.N.Y. May 8, 2009) (lifting stay because of "existence of parallel litigation" and plaintiff's lack of access to documents produced in that parallel litigation); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 251 (D. Md. 2004) (lifting stay where defendant company was "the target of numerous civil and criminal actions," and plaintiffs in parallel litigation were "prepared to proceed with discovery"); *In re Tyco Intern., Ltd. Multidistrict Litig.*, No. 02-1335-B, 2003 WL 23830479, at *4 (D.N.H. Jan. 29, 2003) (lifting stay because "the Securities Action plaintiffs would be at a serious disadvantage if they are denied access to documents that are produced to the other plaintiffs and government investigators" and because "none of the claims at issue are frivolous"); *WorldCom*, 234 F. Supp. at 305 (lifting stay because "without access to documents already made available to [governmental entities] and the documents that will in all likelihood soon be in the hands of the ERISA plaintiffs," a plaintiff is "prejudiced by its inability to make informed decisions about its litigation strategy in a rapidly shifting landscape"); *In re Enron Corp. Sec. Deriv. & ERISA Litig.*, No. MDL 1446, 2002 WL 31845114 (S.D. Tex. Aug. 16, 2002) (same).[4]

Moreover, the advancement of the Delaware Derivative Action raises significant case management concerns that could be addressed by modifying the discovery stay. Without modification of the discovery stay and the consequential coordination of discovery, the same Defendants will have to be deposed on multiple occasions in different actions, and the same documents will have to be produced multiple times. In large-scale securities litigations such as this one, courts have recognized that such case management concerns weigh in favor of lifting the

---

[4] While Defendants maintain that this type of undue prejudice exists only when a corporate defendant is bankrupt, courts have expressly rejected this argument. *See Singer v. Nicor*, No. 02 C 5168, 2003 WL 22013905, at *2 (N.D. Ill. Apr. 23, 2003) ("The court concludes that even if Nicor is not bankrupt, the concerns expressed by the *Enron* and *WorldCom* courts are valid and present in this case. Plaintiffs here may well be unfairly disadvantaged if they do not have access to the documents that the governmental and other agencies already have.").

The Honorable Denny Chin
October 14, 2009
Page 3

discovery stay. *See Tyco*, 2003 WL 23830479, at *4 ("keeping all parties on an equal footing with respect to discovery serves important case management interests"). For these reasons, the developments in the Delaware Derivative Action further support modification of the PSLRA stay.

Second, on October 12, 2009, BoA agreed to waive its attorney-client privilege to produce previously-withheld documents and testimony to a variety of government entities pursuing their own actions against BoA. The issues as to which BoA has agreed to waive its attorney-client privilege are each directly at issue in this litigation. Specifically, in a letter from BoA's counsel to New York Attorney General Andrew Cuomo's Office, BoA agreed to produce documents and testimony concerning its communications with counsel regarding (i) "the disclosures made in, or omitted from, the joint proxy statement" concerning BoA's agreement allowing Merrill to pay up to $5.8 billion in bonuses; (ii) BoA's "consideration of whether to invoke the [MAC];" (iii) Merrill's "impairment of goodwill" during the fourth quarter of 2008; (iv) statements and omissions made before the closing of the Merger concerning Merrill's "financial condition;" and (v) BoA's discussions with Federal regulators regarding the taxpayer bailout and BoA's "consideration of disclosure of such assistance." *See* Letter from Lewis J. Liman to Office of the Attorney General dated Oct. 12, 2009 at 2, attached as Ex. 2.

Notably, BoA has stated that it will "effect the waiver" to produce these documents and testimony "no later than Friday, October 16, 2009" (*id.*) – the same day that the Court has scheduled a pre-motion conference on the instant motion. Thus, discovery in the related governmental actions against BoA continues apace, which further supports modifying the discovery stay. *See In re Metro. Sec. Litig.*, CV-04-25-FVS, 2005 WL 940898, at *2 (E.D. Wash. Mar. 31, 2005) (lifting discovery stay because plaintiffs "risk[ed] being left behind while governmental and other investigations rapidly proceed").

For the reasons set forth above and in our October 6, 2009 letter to the Court, Lead Plaintiffs respectfully request the opportunity to move for an order modifying the discovery stay.

Respectfully Submitted,

Robert N. Kaplan
Frederic S. Fox
**KAPLAN FOX**
 **& KILSHEIMER LLP**
850 Third Avenue, 14th Fl.
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

Max W. Berger
Steven B. Singer
**BERNSTEIN LITOWITZ**
**BERGER & GROSSMANN LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

Gregory M. Castaldo
David Kessler
**BARROWAY TOPAZ KESSLER**
**MELTZER & CHECK LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Co–Lead Counsel for Lead Plaintiffs in the Securities Actions*

cc:   All Counsel (via email)

# Bloomberg.com



### Bank of America Loses Bid to Dismiss Shareholder Merrill Suit
Share | Email | Print | A A A

By Phil Milford and David Mildenberg



Oct. 13 (Bloomberg) -- **Bank of America Corp.**, the largest U.S. lender by assets, failed to persuade a Delaware judge to dismiss a shareholder lawsuit challenging the fairness of its $29 billion acquisition of **Merrill Lynch & Co.**

Shareholders including Nancy Rothbaum sued directors of the Charlotte, North Carolina-based bank alleging they may have paid too much for Merrill in January and owe the bank damages.

The board and then-Chairman **Kenneth D. Lewis** had information relevant to a vote by shareholders "and consciously chose not to disclose it," allegedly for "high-minded reasons," Delaware Chancery Court Judge **Leo Strine Jr.** said at a hearing yesterday, paving the way for trial.

The brokerage, founded by **Charles E. Merrill** in 1914, suffered at least $50 billion in losses and writedowns linked to the collapse of the U.S. subprime mortgage market before agreeing to the sale in September 2008.

The consolidated lawsuit contends Lewis and other board members knew the broker's financial condition was worse than disclosed, with an eventual $15.4 billion fourth-quarter loss, and completed the buyout anyway.

Treasury Talk

Testifying before New York prosecutors in February, Lewis said he was told by U.S. Treasury and Federal Reserve officials not to reveal to stockholders the deteriorating condition of Merrill because it might hurt the teetering U.S. financial system, according to the Wall Street Journal.

During yesterday's hearing in Wilmington, Delaware, on the board's motion to dismiss the case, Strine referred to court papers saying Lewis told then-U.S. Treasury Secretary **Henry M. "Hank" Paulson Jr.** that Bank of America was thinking about terminating the Merrill buyout.

Strine said Lewis claimed Paulson warned him that if the bank backed out, the directors would be removed from their jobs.

In defense of the bank, Strine said because of the benefit to the U.S. economy, there were also "high minded" motives to go ahead with the deal despite Merrill's financial condition.

"This is a stew of great complexity," Strine said.

Lawyer **Lawrence Portnoy**, representing the bank's directors, told Strine they didn't act in bad faith toward shareholders, and that Merrill's distress "was not a secret" and the losses weren't unexpected.

Investors' lawyer **Robert J. Kriner Jr.** told Strine bank directors showed a "lack of care," and said in court papers that "directors faithlessly subverted the best interest of Bank of America and its

stockholders."

New York Case

In another case, Bank of America hired **Paul, Weiss, Rifkind, Wharton & Garrison** to join its legal defense as it prepares for litigation with the Securities and Exchange Commission in federal district court in New York, bank spokesman **Lawrence Di Rita** said.

The bank previously hired **Cleary, Gottlieb, Steen & Hamilton** to work on regulatory issues.

"We are augmenting our legal team with Paul Weiss," Di Rita said yesterday in an interview. "Cleary remains our lead counsel, but we are adding expertise and we continue to prepare and present our facts to the court."

U.S. District Judge **Jed Rakoff** in Manhattan rejected a proposed $33 million settlement between the bank and the SEC over allegations that the bank withheld information from shareholders about $3.6 billion in bonuses paid to Merrill employees. A trial is scheduled for next year.

In the Delaware case, Di Rita said, "We continue to believe we acted appropriately and we are preparing to present out case to the court if that becomes necessary."

Bank of America rose 53 cents to $18.03 in New York Stock Exchange composite trading. The shares have risen 28 percent this year.

The case is Nancy Rothbaum v. Kenneth D. Lewis, CA4307, Delaware Chancery Court (Wilmington).

To contact the reporters on this story: **Phil Milford** in Wilmington, Delaware, at **pmilford@bloomberg.net**; **David Mildenberg** in Charlotte at **dmildenberg@bloomberg.net**.

*Last Updated: October 13, 2009 00:01 EDT*



©2009 BLOOMBERG L.P. ALL RIGHTS RESERVED. Terms of Service | Privacy Policy | Trademarks

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470
(212) 225-2000
FACSIMILE (212) 225-3999
WWW.CLEARYGOTTLIEB.COM

WASHINGTON DC · PARIS · BRUSSELS
LONDON · MOSCOW · FRANKFURT · COLOGNE
ROME · MILAN · HONG KONG · BEIJING

Writer's Direct Dial (212) 225-2550
E-Mail lllmanv@cgsh.com

October 12, 2009

BY FEDEX AND ELECTRONIC MAIL

David A. Markowitz
Office of the Attorney General -- New York
120 Broadway
23rd Floor
New York, NY 10271

Re: Bank of America – Merrill Lynch

Dear Mr. Markowitz:

       I write on behalf of the Bank of America Corporation ("Bank of America") in connection with your office's investigation concerning the merger of Bank of America and Merrill Lynch & Co., Inc. ("Merrill Lynch"). Thank you for taking the time to meet with us on October 6, 2008. We found the meeting to be very constructive.

       Following the meeting, and in the hope of furthering a resolution with your office, Bank of America has reconsidered its position with regard to the waiver of the attorney-client privilege and/or the attorney work product doctrine. Bank of America intends to waive these privileges with respect to the following subjects, which you have identified as pertinent: (1) the disclosures to be made in, or omitted from, the joint proxy statement issued by Bank of America and Merrill Lynch on November 3, 2008 in connection with the merger between Bank of America and Merrill Lynch, except for such documents, information, or communications that have no connection or relation to the payment by Merrill Lynch of variable incentive

David A. Markowitz                    Page 2                    October 12, 2009

compensation in 2008 or other year-end discretionary compensation for the Merrill Lynch 2008 fiscal year and/or the contractual rights of Merrill Lynch to make such payments; (2) Bank of America's consideration of whether to invoke the material adverse change clause of the Bank of America-Merrill Lynch merger agreement; (3) the public disclosure or non-disclosure of any matter relating to any potential impairment of goodwill of Merrill Lynch during its fourth quarter of its Fiscal Year 2008; (4) the public disclosure or non-disclosure, at any time prior to the closing of the merger, of the financial performance, forecasts, and/or preliminary and interim results of Merrill Lynch for its fourth quarter of Fiscal Year 2008; and (5) Bank of America's communications with the Federal Reserve Board, the United States Department of the Treasury, and other Federal officials regarding the provision and terms of federal assistance in connection with the Bank of America-Merrill Lynch merger and Bank of America's consideration of disclosure of such assistance or possible assistance. Our intention is to provide you with information and documents that will permit you to understand the contemporaneous communications with counsel during the time period that the events were taking place. We understand that the time period of interest to you is from September 12, 2008 through January 16, 2009. To be clear, we do not intend to waive any privileges or to produce any privileged documents that were created after the events at issue or that relate solely to private litigation against Bank of America or Merrill Lynch and/or their officers and directors. As we have discussed, Bank of America is involved in numerous civil proceedings, and must preserve its privileges except as indicated above.

       Because Bank of America has decided to reconsider its position with respect to your investigation, it will also produce privileged information to federal regulators and to the Congress. The need to produce privileged information more broadly requires, among other things, that Bank of America obtain a court order in the context of the separate SEC litigation with which you are familiar. We are proceeding as quickly as possible so that we can waive the privilege in connection with your investigation and also promptly be in a position to produce privileged information to the others who have requested it. We presently hope and expect to be able to effect the waiver, both with respect to your Office and others, no later than Friday, October 16, 2009. While we regret the brief delay, the need for a fair and orderly process in connection with the waiver of the privilege with respect to multiple parties is unavoidable.

       We look forward to meeting again with you and your office to discuss these issues and bring this matter to a close.

                                                Very truly yours,

                                                Lewis J. Liman

cc: Mark F. Pomerantz, Esq.